ORAL ARGUMENT NOT YET SCHEDULED

**No. 24-1253 and 25-1072 (consolidated)**

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

East Tennessee Group,
　　　　*Petitioner*,


　　　　*Vs.*


Federal Energy Regulatory Commission,
　　　　*Respondent*,

East Tennessee Natural Gas, LLC,
　　　　*Intervenor.*


On Petition for Judicial Review of Orders of the Federal Energy
Regulatory Commission, Dkt. Nos. 24-1253 and 25-1072

**INITIAL BRIEF FOR PETITIONER**

Kelly A. Daly
Ryan J. Regula
Snell & Wilmer L.L.P.
2001 K. Street NW
Suite 425
Washington, DC 20006
202.908.4260
kdaly@swlaw.com
rregula@swlaw.com


June 16, 2025

i

## CERTIFICATES AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the East Tennessee Group submits this Certificate of Parties, Rulings, and Related Cases.

### A.     Parties and Intervenors

Petitioner

The Petitioner is the East Tennessee Group, consisting of all the municipal entities identified in Exhibit A (collectively "Petitioners").

Respondent

The Respondent is the Federal Energy Regulatory Commission.

Intervenor-Respondent

The Intervenor-Respondent is East Tennessee Natural Gas, LLC.

### B.     Rulings Under Review

Petitioner challenges three orders issued by the United States Federal Energy Regulatory Commission: (1) a March 21, 2024, Order entitled "Order Issuing Certificate and Approving Abandonment," *East Tennessee Natural Gas, LLC*, 186 FERC ¶ 61,210 (2024); (2) a May 20, 2024, Order entitled "Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration," *East Tennessee Natural Gas, LLC*, 187 FERC ¶ 62,119 (2024); and (3) a December 23,

2024, Order entitled "Order Addressing Arguments Raised on Rehearing," *East Tennessee Natural Gas, LLC*, 189 FERC ¶ 61,232 (2024).

## C.    Related Cases

This case has not previously been before this Court, any other United States Court of Appeals, or any other Court in the District of Columbia. Counsel is not aware of any currently pending cases involving substantially the same parties and the same or similar issues in this Court, any other United States Court of Appeals, or any other Court in the District of Columbia.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Petitioner the East Tennessee Group certifies it is a voluntary association of municipal utilities that are not corporations, have no parent corporation, and do not issue stock.

# TABLE OF CONTENTS

CERTIFICATES AS TO PARTIES, RULINGS, AND RELATED CASES .......... ii

CORPORATE DISCLOSURE STATEMENT ....................................................... iv

TABLE OF CONTENTS ................................................................................. v

TABLE OF AUTHORITIES* ...................................................................... vii

GLOSSARY .................................................................................................. x

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...................................... xi

INTRODUCTION ......................................................................................... 1

JURISDICTIONAL STATEMENT .................................................................. 4

STATEMENT OF ISSUES ............................................................................. 5

STATEMENT OF THE CASE ......................................................................... 6

SUMMARY OF THE ARGUMENT ................................................................ 14

STANDING ................................................................................................ 16

STANDARD OF REVIEW ............................................................................ 16

ARGUMENT .............................................................................................. 18

I.     FERC'S PREDETERMINATION OF ROLLED-IN RATE TREATMENT
       LACKED REASONED DECISION-MAKING. .......................................... 18

       A.     THE REASONED DECISION-MAKING STANDARD. .................................. 18

       B.     FERC'S PREDETERMINATION OF ROLLED-IN RATE TREATMENT FOR
              THE COSTS OF THE SAP PROJECT IN THE CERTIFICATE ORDER WAS
              PREMATURE AND IMPROVIDENTLY GRANTED. ..................................... 18

       C.     FERC'S FAILURES ON REHEARING RENDERED THE
              PREDETERMINATION DECISION IN THE CERTIFICATE ORDER NO
              LONGER SUPPORTED BY REASONED DECISION-MAKING. .................... 22

II.    FERC'S MISAPPLICATION OF ITS CERTIFICATE POLICY
       STATEMENT LACKED REASONED DECISION-MAKING. ................. 23

A.    FERC's Certificate Policy Statement Does Not Support FERC's Grant Of Predetermination Of Rolled-In Rates. ........23

B.    Policy Statements Are Not Binding Norms. ..............................28

C.    FERC's Misapplication Of Its Certificate Policy Statement Resulted In Lack Of Reasoned Decision-Making. ......................28

   1.   FERC Improperly Gave Precedence to One Factor..................28

   2.   FERC Improperly Misapplied the Policy Statement as If It Were a "Rule". ..........................................................................30

   3.   FERC Failed to Engage in Balancing of the "Benefits" Alleged by the Pipeline Against the Adverse Economic Consequences Raised by the East Tennessee Group...............31

III.   FERC'S FAILURE TO PROVIDE THE EAST TENNESSEE GROUP THE CEII INFORMATION UNTIL FOURTEEN MONTHS AFTER THE EAST TENNESSEE GROUP REQUESTED IT AND 5 MONTHS AFTER FERC ISSUED ITS MARCH 2024 DETERMINATION WAS AN ABUSE OF DISCRETION. ........................................................................32

CONCLUSION ..................................................................................................37

CERTIFICATE OF COMPLIANCE ....................................................................39

CERTIFICATE OF SERVICE ...........................................................................40

# <u>TABLE OF AUTHORITIES</u>*

**Page(s)**

**Cases**

*Alabama Power Co. v. FERC*,
　220 F.3d 595 (D.C. Cir. 2000)............................................................17

*Cogentrix Energy Power Mgmt., LLC v. FERC*,
　24 F.4th 677 (D.C. Cir. 2022)............................................................30

*Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*,
　956 F.2d 321 (D.C. Cir. 1992)............................................................31

*Constellation Mystic Power, LLC v. FERC*,
　45 F.4th 1028 (D.C. Cir. 2022)............................................................17

*East Tenn. Grp. v. Fed. Energy Regul. Comm'n*,
　Case No. 24-1253 (D.C. Cir. Jul. 18, 2024) ....................................5, 11

*East Tenn. Grp. v. Fed. Energy Regul. Comm'n*,
　Case No. 25-1072 (D.C. Cir. Feb. 19, 2025)...................................5, 14

*Entergy Ark., LLC v. FERC*,
　No. 22-1334, 2025 WL 1108167 (D.C. Cir. 2025) ............................16

*FCC v. Prometheus Radio Project*,
　592 U.S. 414 (2021)............................................................18

*Koch Gateway Pipeline Co. v. FERC*,
　136 F.3d 810 (D.C. Cir. 1998)............................................................16

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992)............................................................16

*Michigan v. EPA*,
　576 U.S. 743 (2015)............................................................31

---

* Cases chiefly relied upon are marked with an asterisk.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983).......................................................................18, 31

*Pac. Gas & Elec. Co v. Fed Power Comm'n*,
    506 F.2d 33 (D.C. Cir. 1974)....................................................28, 29, 33

*Pub. Serv. Elec. & Gas Co. v. FERC*,
    989 F.3d 10 (D.C. Cir. 2021).............................................................30

**Statutes**

5 U.S.C.
    § 706...................................................................................................37
    §706(2)(A) .........................................................................................16

15 U.S.C.
    § 717f(c)...................................................................................6, 25, 26
    § 717r(b)..........................................................................................4, 6

Administrative Procedure Act.......................................x, 5, 14, 16, 18, 37

Natural Gas Act............................................. x, xi, 1, 4, 5, 6, 7, 9, 16, 25

**Rules and Regulations**

18 C.F.R. pt. 157 (2022) ........................................................................6

D.C. Cir. R. 28(a)(7) ...........................................................................16

Federal Rule of Appellate Procedure 26.1 ..............................................iv

Rule 28(a)(1) .......................................................................................ii

**Other Authorities**

*Certification of New Interstate Nat. Gas Pipeline Facilities*,
    88 FERC ¶ 61,227 (Sept. 15, 1999)..................................23, 24, 25, 27

*Certification of New Interstate Nat. Gas Pipeline Facilities*,
    90 FERC ¶ 61,128, at pg. 1 (Feb. 9, 2000)..................................24, 25

*East Tenn. Nat. Gas, LLC*,
    186 FERC ¶ 61,210 (March 21, 2024) .................................... ii, 3, 4, 9, 27, 29, 33

*East Tenn. Nat. Gas, LLC*,
    187 FERC ¶ 62,119 (May 20, 2024) ................................................ ii, 4, 10, 33

*East Tenn. Nat. Gas, LLC*,
    188 FERC ¶ 61,222 (Sept. 30, 2024) ........................................................13, 21

*East Tenn. Nat. Gas, LLC*,
    189 FERC ¶ 61,232 (Dec. 23, 2024) ...........................................iii, 4, 13, 14, 36

*East Tenn. Nat. Gas, LLC*,
    FERC Docket No. CP23-131-000
    .............................................. 1, 2, 3, 5, 7, 9, 12, 14, 18, 19, 21, 22, 32, 33, 34, 35

*East Tenn. Nat. Gas, LLC*,
    FERC Docket No. RP24-617-000
    ...................................................... 1, 3, 8, 9, 12, 13, 14, 15, 19, 20, 21, 22, 23, 37

# GLOSSARY

| | |
|---|---|
| **APA** | Administrative Procedure Act |
| **CEII** | Critical Energy Infrastructure Information |
| **ETNG** | East Tennessee Natural Gas, LLC |
| **FERC** | Federal Energy Regulatory Commission |
| **NGA** | Natural Gas Act |
| **P.App** | Separate Petitioner Appendix item |
| **P.** | Paragraph in a FERC order or filing |
| **pg.** | Page Number |
| **SAP** | System Alignment Program |

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Petitioner, the East Tennessee Group, respectfully requests oral argument in this matter. This case presents important issues of law that affect all shippers on the ETG pipeline system, including the twenty-six East Tennessee Group municipalities (and their ratepayers) located in the State of Tennessee, as a result of the Federal Energy Regulatory Commission's decision to (1) approve East Tennessee Natural Gas, LLC's $390 million System Alignment Program and (2) predetermine that the pipeline may "roll-in" undocumented and unquantified costs associated with this project in a future NGA Section 4 rate case. These determinations not only harm the East Tennessee Group, but they are also inconsistent with the Federal Energy Regulatory Commission's action in another docket (RP24-617-000), where the Commission denied East Tennessee Natural Gas, LLC's request to recover millions of dollars associated with certain "operational purchase and sales" of natural gas. Accordingly, the East Tennessee Group respectfully submits that oral argument would aid the Court in rendering its decision.

## INTRODUCTION

The East Tennessee Group petitions for review from orders of the Federal Energy Regulatory Commission ("FERC") that granted East Tennessee Natural Gas, LLC ("ETNG") a predetermination that the pipeline may roll-in undocumented and unquantified costs associated with ETNG's System Alignment Program Project ("SAP Project") in a future Natural Gas Act ("NGA") Section 4 rate case.

It is imperative to note that this case involves the unique interplay between two dockets at FERC:

(1)     The first, a Certificate proceeding, in FERC Docket No. CP23-131-000, involving FERC's authorization for ETNG to construct the $390 million SAP Project.[2]

(2)     The second, a cost-recovery tariff proceeding in FERC Docket No. RP24-617-000, in which FERC denied ETNG's request to recover millions of dollars in costs associated with certain "operational purchases and sales" of natural gas.[3]

The case before this Court is all about "who pays" more than $390 million for the cost of the certificated SAP Project approved by FERC:

---

[2]     *East Tenn. Nat. Gas, LLC*, FERC Docket No. CP23-131-000.

[3]     *East Tenn. Nat. Gas, LLC*, FERC Docket No. RP24-617-000. Source documents in FERC Docket No. RP24-617-000 cited herein and not included in the Administrative Record are reproduced in the Appendix to this Brief.

- the shippers and consumers, who receive absolutely no benefit from the pipeline's investments in the certificated SAP Project, which the pipeline concedes adds no new capacity;[4]

  OR

- the pipeline, because the record demonstrates that the only economic justification for the SAP Project was to insulate the pipeline from its own contractual liability and exposure to tens of millions of dollars of unrecoverable costs associated with its imprudent contracting policies, including mismanagement of gas supply contracts utilized for system operational balancing.[5]

Protests of ETNG's Certificate Application in FERC Docket No. CP23-131-000 challenged the pipeline's request for pre-granted authorization of rolled-in rate recovery.[6] Notwithstanding those Protests, FERC declined to set the matter for

---

[4]  Motion for Leave to Answer and Answer of East Tennessee Natural Gas, LLC, FERC Docket No. CP23-131-000, at pg. 2 n.5 (June 20, 2023), R[___].

[5]  Motion of the East Tennessee Group and its Members for Leave to Intervene, Protest, and Request for An Evidentiary Hearing, FERC Docket No. CP23-131-000, at pg.11-12 (May 5, 2023) ("ETG reasonably believes that the pipeline's previous contracting practices of steadily increasing the number and demands of Displacement Shippers is the direct cause of the alleged potential increased risk of service disruptions"), R[___].

[6]  Motion for Leave to Answer and Answer of East Tennessee Natural Gas, LLC, FERC Docket No. CP23-131-000 (May 22, 2023), R[___]. Joint Protest and Alternative Request for Evidentiary Hearing of Atmos Energy Corp. & Piedmont Nat. Gas Co., Inc, FERC Docket No. CP23-131-000 (May 5, 2023), R[___].

hearing and instead granted ETNG "prior approval" of "rolled-in" rate treatment[7] of the costs of the certificated SAP Project in any future tariff proceeding in which ETNG seeks to recover those costs.[8]

FERC acted as an ostrich, proverbially sticking its head in the sand, to ignore the evidence in FERC's own records in the cost-recovery tariff proceeding in FERC Docket No. RP24-617-000 that provided new information not available in the Certificate Application FERC Docket No. CP23-131-000 or considered in 186 FERC ¶ 61,210 (the "Certificate Order"). The new information objectively raised serious questions about the continued viability of ETNG's purported justification for the SAP Project upon which FERC had relied in granting a predetermination of rolled-in rates for the costs of the SAP Project. FERC's failure on Rehearing to recognize the implications of circumstances described in FERC's own Orders in FERC Docket No. RP24-617-000, indicating that the grant of rolled-in rate treatment in the Certificate Order had been prematurely and improvidently granted, caused FERC's Rehearing Order to lack reasoned decision-making. Indeed, that very failure on Rehearing to take administrative notice of its own orders in FERC Docket No. RP24-

---

[7] "Rolled-in rate treatment" means a pipeline project's costs of expansion are rolled into a pipeline's existing cost of service and rates are re-set accordingly. Regulatory Research Associates (RRA), "FERC and Natural Gas Pipeline Regulation – A Primer," May 27, 2016.

[8] *East Tenn. Nat. Gas, LLC*, 186 FERC ¶ 61,210 (Mar. 21, 2024), R[___].

617-000 (where FERC recognized that ETNG was inappropriately seeking cost recovery for activities related to the pipeline's own contractual delivery obligations, rather than cost associated exclusively with system integrity) undermined the validity of the initial rolled-in rate determination, causing it to no longer reflect reasoned decision-making.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under section 19(b) of the NGA, 15 U.S.C. § 717r(b), to review the three FERC orders challenged here: (1) a March 21, 2024, Order entitled "Order Issuing Certificate and Approving Abandonment," *East Tennessee Natural Gas, LLC*, 186 FERC ¶ 61,210 (2024) ("Certificate Order"); (2) a May 20, 2024, Order entitled "Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration," *East Tennessee Natural Gas, LLC*, 187 FERC ¶ 62,119 (2024); and (3) a December 23, 2024, Order entitled "Order Addressing Arguments Raised on Rehearing," *East Tennessee Natural Gas, LLC*, 189 FERC ¶ 61,232 (2024) ("Rehearing Order").

The East Tennessee Group timely filed its Petition for Rehearing of the Certificate Order,[9] and its petitions for review on July 18, 2024, and February 19, 2025.[10]

## STATEMENT OF ISSUES

Whether FERC acted arbitrarily and capriciously when it failed to engage in reasoned decision-making when it issued a Certificate of Public Convenience and Necessity under the NGA in FERC Docket No. CP23-131-000 containing a predetermination of rolled-in rate treatment in violation of the Administrative Procedure Act.

Whether FERC acted arbitrarily and capriciously and abused its discretion when it refused to provide the East Tennessee Group access to potentially relevant information, essential to the East Tennessee Group's ability to challenge FERC's determination respecting the justification for rolled-in rate treatment, until after FERC issued its Certificate Order, after FERC denied the East Tennessee Group's Rehearing Application, and after FERC allowed ETNG to commence construction (by which time the East Tennessee Group no longer had an opportunity to utilize the information in a meaningful manner).

---

[9]   Request for Rehearing of the East Tennessee Group and Its Members, FERC Docket No. CP23-131-000 (filed Apr. 19, 2024), R[__].

[10]  *See East Tenn. Grp. v. Fed. Energy Regul. Comm'n*, Case No. 24-1253 (D.C. Cir. Jul. 18, 2024); *see also East Tenn. Grp. v. Fed. Energy Regul. Comm'n*, Case No. 25-1072 (D.C. Cir. Feb. 19, 2025).R[__].

## STATEMENT OF THE CASE

This brief incorporates the Chronology of Events set forth in the Appendix, which summarizes the material facts and procedural history relevant to this matter.[11] The chronology is provided to assist the Court in understanding the sequence of events and to provide a clear factual framework for the legal arguments presented herein.

This proceeding stems from ETNG filing an application pursuant to section 7(b) and 7(c) of the NGA, 15 U.S.C. § 717f(b) and (c), and Part 157 of FERC's regulations, 18 C.F.R. pt. 157 (2022), requesting certificate authorization to construct a $390 million project called its "SAP" and a predetermination of rolled-in rate treatment allowing cost recovery from all system shippers.

In its March 31, 2023, Certificate Application, ETNG proposed to construct miles of additional pipeline and replace miles of existing pipeline, construct new compressor stations and make various other modifications to its system. In addition, ETNG sought FERC approval for a predetermination of "rolled-in rate treatment" for all of the costs of this project.

---

[11] *Chronology of Events*, P.App-0001.

In response to ETNG's application, the East Tennessee Group filed a Motion for Leave to Intervene, Protest, and Request an Evidentiary Hearing in which the East Tennessee Group asserted, *inter alia*, that ETNG's Application was deficient.[12]

ETNG failed to provide complete information sufficient for FERC to even consider whether ETNG should be entitled to a predetermination that the pipeline may roll-in undocumented and unquantified costs associated with ETNG's SAP Project in a future NGA Section 4 rate case. For instance, on June 1, 2023, less than a month after the filing of ETNG's SAP Project application, ETNG filed its 2022 Form 567 – Annual Report of System Flow Diagrams and Capacity for calendar year ending December 31, 2022 ("2022 Form 567 Data").

Immediately following that filing, the East Tennessee Group contacted ETNG requesting access to the 2022 Form 567 Data for purposes of evaluating the pipeline's representations in the SAP Project and to identify additional information needed to further supplement the East Tennessee Group's May 5, 2023, Protest. ETNG's Regulatory Director declined the East Tennessee Group's request on the grounds that the requested form included "Critical Energy Infrastructure Information" ("CEII")[13] and, falsely, indicated that the information could only be

---

[12]   Motion of the East Tennessee Group and its Members for Leave to Intervene, Protest, and Request for An Evidentiary Hearing, FERC Docket No. CP23-131-000 (May 5, 2023). R[__].

[13]   Subsequent events demonstrate that ETNG's refusal was unjustified.

obtained from FERC. On June 5, 2023, the East Tennessee Group submitted a formal request to FERC to obtain access to ETNG's 2022 Form 567 Data. By the time FERC approved the release of the Form 567 Data to the East Tennessee Group (14-months later) it was too late; at the very least, FERC had already issued the Certificate Order including a predetermination of rolled-in rates.

Additionally, despite the concerns the East Tennessee Group's Protest raised – that ETNG's aggressive contracting practices, coupled with its failure to recognize the original capacity limitations of the system, were the cause of (or at least a contributor to) the pipeline's inability to make deliveries of gas consistent with its FERC-approved certificate – ETNG provided no record evidence to the contrary. Furthermore, as demonstrated by evidence in FERC Docket No. RP24-617-000, ETNG's mismanagement of its gas purchase and sales contracting as part of the pipeline's operational balancing practices undermined the economic justification for the $390 million SAP Project because more prudent operational balancing practices would have been far more economical and rendered the SAP project's $390 million price tag unreasonable and imprudent.

At the heart of each of the arguments in the East Tennessee Group's Protest was the fact that ETNG's SAP Project Certificate Application failed to provide sufficient evidence for FERC to provide a predetermination that the pipeline may

roll-in undocumented and unquantified costs associated with the project in a future NGA Section 4 case.

Notwithstanding the East Tennessee Group's Protest, on March 21, 2024, FERC issued an Order granting ETNG a certificate to construct the SAP Project and granting ETNG's request for a predetermination of rolled-in rate treatment.[14] FERC noted that the East Tennessee Group requested an evidentiary hearing on the basis that ETNG failed to meet its evidentiary burdens; however, FERC held that "all issues of material fact relating to ETNG's proposal are capable of being resolved on the basis of the written record, which contains substantial evidence on these issues."[15]

On April 19, 2024, the East Tennessee Group submitted to FERC a Request for Rehearing again arguing, *inter alia,* that (1) FERC erred by issuing a decision prematurely before the East Tennessee Group was provided access to critical information and documents necessary to enable the East Tennessee Group to meaningfully participate in the proceedings involving ETNG's Certificate Application, and (2) the predetermination of rolled-in rate treatment was not based on reasoned decision-making.[16] FERC denied the East Tennessee Group's Request

---

[14]  *East Tenn. Nat. Gas*, *LLC*, 186 FERC ¶ 61,210 (Mar. 21, 2024), R[__].

[15]  *Id*. at P. 9, R[__].

[16]  Request for Rehearing of the East Tennessee Group and Its Members, FERC Docket No. CP23-131-000, at pg.5 (Apr. 19, 2024), R[__].

by Notice of Operation of Law on May 20, 2024.[17] Significantly, the East Tennessee Group's formal request for ETNG's 2022 Form 567 data was still unanswered.

Finally, on May 29, 2024, eight days short of a year after the East Tennessee Group initiated the request for CEII information,  more than two-months after FERC granted rolled-in cost recovery of the SAP Project, and nine days after FERC denied the East Tennessee Group's Request for Rehearing by Notice of Operation of Law, the East Tennessee Group received a Release Letter CEII No. CE23-61 from FERC. This letter indicated that the East Tennessee Group's request to obtain access to ETNG's 2022 Form 567 Data was approved. However, in that same letter, the East Tennessee Group was informed that it would receive a separate email message with instructions for accessing the CEII. But no such email regarding instructions for accessing the 2022 Form 567 Data was received.

On May 30, 2024, ETNG filed its 2023 Form 567 – Annual Report of System Flow Diagrams and Capacity for calendar year ending December 31, 2023 ("2023 Form 567 Data"). In response to this filing, the East Tennessee Group contacted FERC to inquire whether a new formal request was required to obtain access to this 2023 Form 567 Data. On this call, the East Tennessee Group was advised by the FERC CEII representative that it is FERC's position that the pipeline is free to

---

[17] *East Tenn. Nat. Gas*, *LLC*, 187 FERC ¶ 62,119 (May 20, 2024), R[__].

provide its own CEII information directly to a requesting party because the FERC regulations do not restrict the pipeline's actions *vis-a-vis* a requester. Rather, the East Tennessee Group was informed that the FERC regulations merely govern the circumstances under which FERC is authorized to disseminate CEII information received from a pipeline and that the original CEII designation is a choice made by the pipeline – in other words, ETNG had improperly denied the East Tennessee Group request.

At a FERC CEII staff member's suggestion, the East Tennessee Group, once again, contacted ETNG's Representative directly to request the 2022 and 2023 Form 567 Data. Even though the East Tennessee Group informed the pipeline's representative of FERC's explanation of the CEII regulations, the ETNG Representative again denied the East Tennessee Group's request and, yet again, directed the East Tennessee Group to submit another formal CEII request to FERC.

To ensure its rights were preserved, the East Tennessee Group filed a Petition for Review in this Court on July 18, 2024.[18] The East Tennessee Group's Court of Appeals Petition was then stayed.

On August 15, 2024, during procedural communication regarding the East Tennessee Group's pending Petition for Review in this Court, a representative of the

---

[18] *Petition for Review, East Tenn. Grp. v. Fed. Energy Regul. Comm'n*, No. 24-1253 (D.C. Cir. Jul. 18, 2024), R [___].

FERC's Office of the Solicitor inquired whether the East Tennessee Group had ever received access to the requested 2022 Form 567 Data. Counsel confirmed that the East Tennessee Group had not yet received the requested CEII materials and executed an additional request for the Form 567 Data that same day. The *very next day* (August 16, 2024), FERC finally provided the requested 2022 Form 567 Data and 2023 Form 567 Data to the East Tennessee Group.

Thus, the East Tennessee Group was belatedly provided access to the CEII information after FERC had acted on the substantive certificate and had granted a predetermination of rolled-in rates. As a result, the timely-requested and relevant information contained therein would no longer be helpful to the East Tennessee Group's ability to protest the Certificate Application and the pre-granted approval of ETNG's request to roll-into rates the $390,000,000 price tag for the SAP Project.

In a concurrent matter, on March 29, 2024, just eight days after FERC granted ETNG's certificate to construct the SAP Project and approved ETNG's request for a predetermination of rolled-in rate treatment in FERC Docket No. CP23-131-000, ETNG submitted a "Cashout Report" tariff filing in FERC Docket No. RP24-617-000.[19] The East Tennessee Group filed a timely protest in FERC Docket No. RP24-617-000.[20]

---

[19]  Cashout Report, FERC Docket No. RP24-617-000 (Mar. 29, 2024), P.App-0067.

[20]  Protest of the East Tennessee Group, FERC Docket No. RP24-617-000 (Apr. 10,

On September 30, 2024, FERC agreed with the East Tennessee Group that ETNG's application sought recovery of costs of "operational purchases and sales" that were "impermissibly included in the report in violation of [ETNG's] tariff."[21] The $16.9 million in transaction costs that ETNG attempted to recover in FERC Docket No. RP24-617-000 were not the kind of costs ETNG historically incurred in transporting gas through the ETNG system.[22] To the contrary, FERC directed ETNG to remove all costs related to "ensuring it meets its firm service obligations."[23] On rehearing in the SAP Project Certificate docket (RP23-131-000), FERC nevertheless refused to revisit its premature and improvident grant in the Certificate Order of prior approval of rolled-in rate treatment for the cost of the SAP Project.[24]

On December 23, 2024, eight months after the East Tennessee Group submitted its Request for Rehearing, FERC finally issued its *Order Addressing Arguments Raised on Rehearing* regarding ETNG's System Alignment Program

---

2024), P.App-0095.  A Protest was also filed by Atmos Energy Corp., Motion to Intervene, Protest, Request for Summary Rejection, and Alternative Request for Technical Conference of Atmos Energy Corp., FERC Docket No. RP24-617-000 (Apr. 10, 2024), P.App-0099.

[21] *East Tenn. Nat. Gas, LLC,* 188 FERC ¶ 61,222 at P. 2 (Sept. 30, 2024), P.App-0155.

[22] *Id.* at P. 49, P.App-0176.

[23] *Id.* at P. 25, P.App-0165.

[24] *East Tenn. Nat. Gas, LLC,* 189 FERC ¶ 61,232, at pg. 3 n.13 (Dec. 23, 2024), R[__].

Project under FERC Docket No. CP23-131-000.[25] The East Tennessee Group filed an updated Petition for Review with this Court on February 19, 2025.[26]

## SUMMARY OF THE ARGUMENT

FERC's Certificate Order of March 21, 2024, and the subsequent orders upholding it, were arbitrary and capricious, an abuse of discretion, denied due process, and lacked reasoned decision-making.

The East Tennessee Group challenged FERC's refusal in the Certificate Order to set the issues raised by the East Tennessee Group for hearing as inconsistent with due process and arbitrary and capricious standards under the Administrative Procedure Act ("APA").[27]   On Rehearing in the Certificate Proceeding (FERC Docket No. CP23-131-000), (1) FERC's failure to address the obfuscation and denial of access to relevant information, which was not made available until after the Certificate Order was granted, (2) FERC's failure to recognize the existence of contradictory evidence in FERC's own records in *East Tennessee Natural Gas* FERC Docket No. RP24-617-000, and (3) improper adherence on Rehearing to its initial determination respecting rolled-in rates in the Certificate Order, despite

---

[25]   *East Tenn. Nat. Gas, LLC*, 189 FERC ¶ 61,232 (Dec. 23, 2024), R[__].

[26]   *East Tenn. Grp. v. Fed. Energy Regul. Comm'n*, Case No. 25-1072 (D.C. Cir. Feb. 19, 2025), R [__].

[27]   Request for Rehearing of the East Tennessee Group and Its Members, FERC Docket No. CP23-131-000, at pg. 6-8 (Apr. 19, 2024), R[__].

evidence in FERC Docket No. RP24-617-000 indicating that the determination had been premature and improvidently issued, caused the earlier determination in the Certificate Order to no longer be based on reasoned decision-making.

In addition, the Policy Statement relied upon in the Certificate Order as the basis for FERC's determination respecting rolled-in rates lacks the authority of a rulemaking. FERC erred in applying the Policy Statement as if it were a Rule and failed to demonstrate that the Policy Statement's standards were applicable under the circumstances of ETNG's SAP Project Certificate Application.

Furthermore, FERC misapplied the Policy Statement in a manner inconsistent with FERC's more fully developed precedents respecting recoverability of costs based on prudence considerations and cost causation principles.

FERC gave undue weight to one factor of the Policy Statement at the expense of all other balancing factors to the detriment of existing shippers and customers. Giving undue precedence to the "no new capacity" factor was arbitrary, capricious, and lacked reasoned decision-making.

Finally, FERC denied the East Tennessee Group timely access to information in ETNG's Form 567s that was essential to the East Tennessee Group's ability to participate meaningfully in the SAP Project Certificate Proceeding. That procedural denial was both an abuse of discretion and a fundamental denial of due process,

15

which caused FERC's determination respecting the appropriateness of the pre-grant of rolled in rate treatment of the SAP Project to lack reasoned decision-making.

## STANDING

The East Tennessee Group has Article III standing to challenge FERC's orders. *See* D.C. Cir. R. 28(a)(7); *see also Entergy Ark., LLC v. FERC,* No. 22-1334, 2025 WL 1108167, at *1 (D.C. Cir. 2025). That is because the FERC orders inflict an "actual[,]" "concrete[,] and particularized" injury on the East Tennessee Group's members. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). By issuing a Certificate of Public Convenience and Necessity under the NGA containing a predetermination of rolled-in rate treatment, FERC has forced the East Tennessee Group's member companies to pay for imprudently incurred costs of the SAP Project. This Court's vacatur and remand of the challenged Certificate Order of March 21, 2024, would redress those injuries. The East Tennessee Group's injuries are directly traceable to FERC's orders and redressable by this Court. *Id.* at 560.

## STANDARD OF REVIEW

"FERC is subject to the constraints of the Administrative Procedure Act [(APA)] and consequently is forbidden from acting in a way that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Koch Gateway Pipeline Co. v. FERC*, 136 F.3d 810, 815 (D.C. Cir. 1998) (quoting 5 U.S.C. §706(2)(A)).

Although this Court accords some deference to FERC's decisions based upon the evidence before it, this Court's "review is not … an empty gesture: [FERC] must be able to demonstrate that it has made a reasoned decision based upon substantial evidence in the record." *Alabama Power Co. v. FERC*, 220 F.3d 595, 599 (D.C. Cir. 2000). "[D]eference does not mean carte blanche, and [FERC] must at all times demonstrate the markers of principled and reasoned decision making supported by the evidentiary record." *Constellation Mystic Power, LLC v. FERC*, 45 F.4th 1028, 1043 (D.C. Cir. 2022).

## ARGUMENT

**I.    FERC's Predetermination of Rolled-In Rate Treatment Lacked Reasoned Decision-Making.**

### A.    THE REASONED DECISION-MAKING STANDARD.

"The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Under this standard, an agency "must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48-49 (1983).

FERC violated its duty of reasoned decision-making when FERC refused to recognize that evidence in FERC's own records of a related proceeding, involving the same pipeline, demonstrated that FERC's previous grant of rolled-in rate treatment of the costs of the SAP Project had been prematurely and improvidently granted.

### B.    FERC'S PREDETERMINATION OF ROLLED-IN RATE TREATMENT FOR THE COSTS OF THE SAP PROJECT IN THE CERTIFICATE ORDER WAS PREMATURE AND IMPROVIDENTLY GRANTED.

On Rehearing of the Certificate Order, the East Tennessee Group challenged FERC's refusal to set the issues raised by the East Tennessee Group for hearing as inconsistent with due process, arbitrary and capricious under the APA, and, therefore, lacking reasoned decision-making. FERC's failure on Rehearing of the Certificate Order in FERC Docket No. CP23-131-000 to take cognizance of the

18

contradictory evidence in FERC's own records in ETNG's Cashout Proceeding (FERC Docket No. RP24-617-000), and FERC's adherence on Rehearing in FERC Docket No. CP23-131-000 to its initial determination respecting rolled-in rates in the Certificate Order, confirm that FERC's grant of a predetermination respecting rolled-in rates was no longer based on reasoned decision-making.

The evidence in ETNG's Cashout Application in FERC Docket No. RP24-617-000 demonstrated that the SAP Project costs (to which FERC granted a predetermination of rolled-in rate treatment) were actually a direct consequence of historically imprudent gas contracting practices. FERC rejected ETNG's effort in FERC Docket No. RP24-617-000 to recover operating balancing costs attributable to gas purchases and sales needed to serve ETNG's contractual obligations. Specifically, ETNG had not previously disclosed to FERC in the SAP Certificate Application the pipeline's practice of selling "firm" transportation capacity in reliance on assumed gas transportation flow patterns that would enable the pipeline to make firm deliveries of the additional volumes through "backhauls" and/or "displacement.[28] Critically important, the costs which ETNG sought recovery in FERC Docket No. RP24-617-000 were a consequence of the combination of:

---

[28]  Protest of the East Tennessee Group, at pg. 2, FERC Docket No. RP24-617-000 (Apr. 10, 2024), P.App-0096.

(1)     the pipeline's assumption of the risk under the pipeline's contracting practice of selling "firm" capacity that could only be satisfied under conditions which enabled the pipeline to make deliveries by backhaul or displacement;[29] and

(2)     the changing market conditions that eliminated, or greatly reduced, the pipeline's ability to deliver gas by displacement in satisfaction of its contractual obligations, and concomitantly, exposed the pipeline to huge contractual liabilities.[30]

In 2022-2023, the pipeline incurred millions of dollars in gas commodity transaction costs in order to minimize the pipeline's on-going contract liability from its historical contracting practices.[31]  In its Cashout Report in FERC Docket No. RP24-617-000, ETNG sought to recover $16.9 million dollars of operational balancing costs, which included millions of dollars in losses associated with gas purchase and sales needed to serve ETNG's contractual obligations.

On September 30, 2024, in FERC Docket No. RP24-617-000, FERC denied ETNG recovery of those "operational purchases and sales [costs]" because they were

---

[29]   *Id*. at pg. 2-3, P.App-0096-0097.

[30]   *Id*.

[31]   Cashout Report, FERC Docket No. RP24-617-000, at pg. 1 (Mar. 29, 2024), P.App-0067.

"impermissibly included in the [cashout] report in violation of [ETNG's] tariff."[32] FERC concluded that the operational gas purchase and sales cost that ETNG attempted to recover in FERC Docket No. RP24-617-000 were not the kind of costs ETNG historically incurred in connection with operation and balancing activities.[33] Accordingly, FERC found that such costs were not recoverable under ETNG's existing tariff language applicable to operational gas balancing activity.[34]

FERC's March 21, 2024, grant of a predetermination of rolled-in rate treatment in the Certificate Order was premature and improvidently issued because ETNG's March 29, 2024, filing in FERC Docket No. RP24-617-000 to recover millions of dollars of gas purchase and sale transaction costs was made while the Certificate proceeding in FERC Docket No. CP23-131-000 remained an open docket on rehearing at FERC.

The connection of the evidence in FERC Docket No. RP24-617-000 to the Certificate Proceeding in FERC Docket No. CP23-131-000 at issue in this appeal is simple and transparent. ETNG's failed attempt to recover gas purchase and sales losses in FERC Docket No. RP24-617-000 was the short-term solution to a problem that would ultimately be eliminated on a long-term basis by ETNG's SAP Project.

---

[32] *East Tenn. Nat. Gas, LLC*, 188 FERC ¶ 61,222, at P. 2 (Sept. 30, 2024), P.App-0155.

[33] *Id*. at P. 24, P.App-0165.

[34] *Id*. at P. 24-25 (rejecting ETNG's attempt to recover $16 million in advance operation gas purchase costs).

This is because the SAP Project would eliminate the pipeline's exposure to the risk of the gas purchase and sales losses associated with its inability to honor its contractual obligations with displacement volumes. The SAP Project would enable the pipeline to avoid reincurring those unrecoverable losses in the future.[35]

### C. FERC'S FAILURES ON REHEARING RENDERED THE PREDETERMINATION DECISION IN THE CERTIFICATE ORDER NO LONGER SUPPORTED BY REASONED DECISION-MAKING.

The reasonable inference from the evidence in FERC Docket No. RP24-617-000 was that the underlying economic justification for the SAP Project was the pipeline's need to minimize its contractual risks and avoid the prospect of incurring millions of dollars in unrecoverable gas commodity transaction costs. That reasonable inference alone should have been sufficient to cause FERC to revisit its previous grant of rolled-in rate treatment of the SAP Project to assure that such determination had not been premature and improvidently granted.

FERC's initial error in the Certificate Order was refusing to afford shippers the opportunity to demonstrate that ETNG's imprudent contracting practices (including in retrospect mismanagement of its operational balancing contracting practices) caused or contributed to the need for the SAP Project. That error was compounded

---

[35] Abbreviated Application for a Certificate of Public Convenience and Necessity, FERC Docket No. CP23-131-000 (Mar. 31, 2023), R[__]; Motion of the East Tennessee Group and Its Members for Leave to Intervene, Protest, and Request for an Evidentiary Hearing, FERC Docket No. CP23-131-000 (May 5, 2023), R[__].

by FERC's failure, while the Certificate Order was pending on rehearing, to recognize the revelations in FERC Docket No. RP24-617-000 (*i.e.*, that the SAP Project was indeed a means to protect the pipeline from the imprudent contract risks the pipeline assumed and the excessive costs of the pipeline's imprudent mismanagement of its gas supply contracting practices as part of the pipeline's operational system balancing operations).

Those disclosures made it evident that the Commission's previous decision respecting the appropriateness of a predetermination of rolled-in cost treatment had been premature and improvidently granted. Under such circumstances, the Certificate Order's predetermination of rolled-in rates for the SAP Project challenged in this appeal was no longer based on reasoned decision-making.

## II.    FERC's Misapplication of Its Certificate Policy Statement Lacked Reasoned Decision-making.

### A.    FERC'S CERTIFICATE POLICY STATEMENT DOES NOT SUPPORT FERC'S GRANT OF PREDETERMINATION OF ROLLED-IN RATES.

In September 1999, FERC issued a Policy Statement addressing the certification of new construction not covered by the optional or blanket certificate authorizations. *See Certification of New Interstate Nat. Gas Pipeline Facilities*, 88 FERC ¶ 61,227 (Sept. 15, 1999) ("Policy Statement"), P.App-0005. "The purpose of the Policy Statement was to provide the industry with guidance as to the analytical framework the Commission will use to evaluate proposals for certificating new

23

construction." *Certification of New Interstate Nat. Gas Pipeline Facilities*, 90 FERC ¶ 61,128, at pg. 1 (Feb. 9, 2000) ("Clarifying Statement"), P.App-0036. FERC explained that under the Policy Statement "the threshold question applicable to existing pipelines is whether the project can proceed without subsidies from their existing customers" when a certificate application is filed. Policy Statement, 88 FERC ¶ 61,227, at pg. 18 (Sept. 15, 1999), P.App-0022. Once that question is answered, under the Policy Statement, FERC next asks "whether the applicant has made efforts to eliminate or minimize any adverse effects the project might have" on three protectible types of interests: (1) "the existing customers of the pipeline proposing the project," (2) "existing pipelines in the market and their captive customers," or (3) "landowners and communities affected by the route of the new pipeline." *Id.*

If the proposed project does not have any adverse effect on any of these three protectible interests, "then no balancing of benefits against adverse effects would be necessary" and FERC will issue a preliminary determination or a final order. *Id.* However, if there are adverse effects on any one of the enumerated interests, then the pipeline proposing the project must make efforts to minimize those adverse effects. *Id.* at pg. 19, P.App-0023. Under the Policy Statement, FERC then performs a balancing test before determining whether a project may proceed. *Id.* It is important

to note that FERC may only approve an application for a certificate if the public benefits from the project outweigh any adverse consequences. *Id*.

A half-year later, in February 2000, FERC issued a "Clarifying Statement" regarding the Policy Statement. Clarifying Statement, 90 FERC ¶ 61,128 (Feb. 9, 2000), P.App-0036. The February 2000 Order sought to clarify four issues: (1) the application of the Policy Statement to optional certificates, (2) the application of the threshold no-subsidy requirement, (3) those relating to some of the factors to be considered in the balancing test, and (4) the application of the Policy to projects preceding its issuance. *Id.* at p. 2, P.App-0037.

Of particular interest to this appeal is FERC's comments regarding the application of the threshold "no-subsidy" requirement. In the February 2000 Clarifying Statement, FERC noted that "in the current market, [the Policy Statement's] threshold requirement that pipeline expansions should not be subsidized by existing customers is necessary to enable a finding of a market need for a project." *Id.* at pg. 6, P.App-0042. A market need for the project is a requirement of the statutory public convenience and necessity test under Section 7(c) of the NGA. 15 U.S.C. §717f(c).

FERC then discussed how its no-subsidy policy should be applied. *See* Clarifying Statement, 90 FERC ¶ 61,128, at pg. 9-10, (Feb. 9, 2000), P.App-0046-0047. Specifically, FERC stated "[e]xisting shippers should not have the rates under

their current contracts changed because the pipeline has built an expansion to provide service to new customers;" however, "[e]xisting customers' rates can be increased for projects that improve their service." *Id.* at pg. 6, P.App-0042.

Tellingly, FERC did not expand upon this latter point but instead moved on to providing a two-step process for determining whether the market finds an expansion project economically viable. *Id.*, P.App-0043. First, prior to the Certificate Application, the pipeline must "conduct an open season in which existing customers are given an opportunity to permanently relinquish their capacity." *Id.* Second, "the expansion shippers must be willing to purchase capacity at a rate that pays the full costs of the project, without subsidy from existing shippers through rolled-in pricing." *Id.* at pg. 7. FERC concluded the two-step process was needed to ensure "either the pipeline or its expansion shippers are willing to fully fund the project." *Id.*

In the Clarifying Statement, FERC did not further address the Policy Statement language that "[e]xisting customers rates can be increased for projects that improve their service." *Id.* at pg. 6. Thus, the commentary from the Policy Statement on the issue is all that remains.

In its Certificate Order, dated March 21, 2024, FERC relies on a footnote from the original Policy Statement to support its determination that rolled-in rates are permissible "for facilities constructed to improve the reliability of service to existing

customers or to improve service by replacing existing capacity."[36] In particular, FERC held that "[s]ince no new capacity is being created for sale, no cost of service or rate information is needed for the Commission to consider whether [ETNG] should be granted a predetermination to roll in the costs associated with this project."[37]

However, both FERC's reliance on footnote 12 in its March 21, 2024, Certificate Order and FERC's previous comments in the Policy Statement do not explain why projects that allegedly improve existing service or improve reliability are somehow exempt from carefully thought out no-subsidy requirement where, despite the lack of new capacity, there may nevertheless be subsidization of costs the pipeline would otherwise be required to assume under traditional prudence standards and cost causation principles. Such subsidization would appear to be at odds with the intent of the Policy Statement and the Clarifying Statement, as well as the Policy Statement's subsequent discussion regarding adverse effects on potentially affected interests, prudence in proportionality of the costs, and the weighing of the projects benefits with its adverse effects. Policy Statement, 88 FERC ¶ 61,227, at p. 22-24 (Sept. 15, 1999), P.App-0026-0028.

---

[36] *East Tenn. Nat. Gas, LLC*, 186 FERC ¶ 61,210, at P. 45 (citing *Policy Statement*, 88 FERC ¶ 61,227, at pg. 19 n. 12), R[__].

[37] *Id.* at P. 46.

**B.    POLICY STATEMENTS ARE NOT BINDING NORMS.**

It is well established that "Policy Statements" are not "binding norms" such as "rules." *Pac. Gas & Elec. Co v. Fed Power Comm'n*, 506 F.2d 33, 38 (D.C. Cir. 1974). In each instance when FERC seeks to apply a Policy Statement, the burden is on FERC to establish the validity of doing so. *Id*.

> When the agency applies [a] policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued. An agency cannot escape its responsibility to present evidence and reasoning supporting its substantive rules by announcing binding precedent in the form of a general statement of policy.

*Id*. In this case, FERC failed to justify application of the Policy Statement under the circumstance of the SAP Project. That failure constitutes lack of reasoned decision-making.

**C.    FERC'S MISAPPLICATION OF ITS CERTIFICATE POLICY STATEMENT RESULTED IN LACK OF REASONED DECISION-MAKING.**

**1.    FERC Improperly Gave Precedence to One Factor.**

From the outset, the case was not about whether the SAP Project added new capacity.

In focusing on what was a non-issue, FERC failed to engage in reasoned decision-making with respect to its grant of rolled-in rate treatment of the costs of SAP Project. In particular, Section D(1) of the Certificate Order addresses the

question whether pre-granted approval of rolled-in rates is appropriate by providing *only two paragraphs* of explanation on the issue.[38]

The first paragraph of FERC's explanation in the Certificate Order focuses on the pipeline having to demonstrate that rolling in the costs associated with the construction and operation of the new facilities will not result in existing customers subsidizing the expansion. The paragraph concludes:

> The Certificate Policy Statement recognized the appropriateness of rolled-in rate treatment for facilities constructed to improve the reliability of service to existing customers or to improve service by replacing existing capacity, rather than to increase levels of service.[39]

The second paragraph of the Certificate Order then applies FERC's interpretation of the Certificate Policy Statement in a conclusory manner:

> Since no new capacity is being created for sale, no cost of service or rate information is needed for the Commission to consider whether [ETNG] should be granted a predetermination to roll in the costs associated with this project.[40]

That cursory analysis elevated one aspect of the Policy Statement – whether new capacity was being added (a non-issue) – to controlling status, ignoring entirely other aspects of FERC's traditional cost recovery policies, *i.e.*, that costs must have been prudently incurred and that recovery is consistent with cost-causation principles. *See*

---

[38]  *East Tenn. Nat. Gas, LLC*, 186 FERC ¶ 61,210 at P. 39-48 (Mar. 21, 2024), R[__].

[39]  *Id.* at P. 45.

[40]  *Id*. at P. 46.

*Cogentrix Energy Power Mgmt., LLC v. FERC*, 24 F.4th 677, 684 (D.C. Cir. 2022) (stating that the Commission "will approve recovery of prudently incurred costs necessary to comply with the mandatory reliability standards ... provided that the proposed rates are just and reasonable and not unduly discriminatory or preferential"); *see also Pub. Serv. Elec. & Gas Co. v. FERC*, 989 F.3d 10, 13 (D.C. Cir. 2021) (finding that the cost-causation principle requires costs to be allocated to those who cause the costs to be incurred and reap the resulting benefits).

### 2.    FERC Improperly Misapplied the Policy Statement as If It Were a "Rule".

FERC erroneously latched onto the pipeline's representation that no new capacity was being added as the sole and exclusive justification for application of the Policy Statement respecting the grant of rolled-in rate treatment. In doing so, FERC precluded broader examination of issues that should have, but were not, considered in applying traditional prudence and cost-causation principles. Under the circumstances and facts of this case, doing so elevated the Policy Statement to the status of a "Rule" and caused FERC's action to lack the essential attributes of reasoned decision-making.

FERC failed to engage in reasoned decision-making because FERC ignored the fact that the Policy Statement implicitly only authorizes a predetermination of rolled-in treatment (i) of prudently incurred costs (ii) consistent with cost-causation principles. Nothing in the record of the Certificate proceeding indicates that these

factors were even considered. That failure constitutes a lack of reasoned decision-making.

### 3. FERC Failed to Engage in Balancing of the "Benefits" Alleged by the Pipeline Against the Adverse Economic Consequences Raised by the East Tennessee Group.

FERC's Certificate Order is also arbitrary and capricious because it unreasonably relies upon the alleged public benefits of ETNG's SAP Project without taking into consideration the adverse economic consequences of the Project. "[R]easonable regulation ordinarily requires paying attention to the advantages and the disadvantages of agency decisions." *Michigan v. EPA*, 576 U.S. 743, 753 (2015). An agency must "face the trade-off[s]" caused by its decisions and explain why a "trade-off" it selected "was worth it." *Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 956 F.2d 321, 323-24 (D.C. Cir. 1992). Otherwise, an agency has not fulfilled its duty under reasonable decision-making to consider "important aspect[s] of the problem," which is among the most fundamental obligations of non-arbitrary decision-making. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

In relying exclusively on the pipeline's assertion that "no new capacity is being created," the Certificate Order rejected any substantive discussion of the adverse economic consequences of the SAP Project. As a result, FERC's Certificate Order lacked reasoned decision-making and should be vacated.

31

III.  **FERC'S FAILURE TO PROVIDE THE EAST TENNESSEE GROUP THE CEII INFORMATION UNTIL FOURTEEN MONTHS AFTER THE EAST TENNESSEE GROUP REQUESTED IT AND 5 MONTHS AFTER FERC ISSUED ITS MARCH 2024 DETERMINATION WAS AN ABUSE OF DISCRETION.**

The East Tennessee Group sought ETNG's 2022 Form 567 reports in a timely manner and yet was met with purposeful obfuscation and obstruction at every turn. FERC's unreasonable and unjustified failure to provide in a timely manner the potentially relevant information that the East Tennessee Group sought crippled the East Tennessee Group's ability to meaningfully participate in the SAP Project Certificate process in FERC Docket No. CP23-131-000.

In particular, less than a month after ETNG filed its SAP Project application, ETNG filed its 2022 Form 567 Data. Immediately following that filing, the East Tennessee Group contacted ETNG requesting access to the 2022 Form 567 Data for purposes of evaluating the pipeline's representations in the SAP Project and to identify additional information needed to further supplement the East Tennessee Group's May 5, 2023, Protest.[41] ETNG dismissed the East Tennessee Group's

---

[41]  The East Tennessee Group Correspondence with ETNG (June 4, 2023), P.App-0063.

request and told the East Tennessee Group to submit a formal request to FERC if it wanted the information.[42] The East Tennessee Group did just that on June 5, 2023.[43]

Eight months passed and the East Tennessee Group still did not receive the information it requested. Then, on March 21, 2024, FERC issued an order granting ETNG a certificate to construct the SAP Project and granting a predetermination of rolled-in rate treatment.[44] In its March 2024 Order, FERC held that "all issues of material fact relating to ETNG's proposal are capable of being resolved on the basis of the written record, which contains substantial evidence on these issues."[45] However, the East Tennessee Group continued to be denied information potentially necessary to assure that the record which allegedly supported FERC's determination was complete. The East Tennessee Group identified this issue in its April 19, 2024, Request for Rehearing,[46] but that request was denied by operation of law on May 20, 2024, without a single word addressing the issue at hand.[47]

---

[42] *Id.*

[43] Chronology of Events, P.App-0001; *see also* Request for Rehearing of the East Tennessee Group and Its Members, FERC Docket No. CP23-131-000 (Apr. 19, 2024), R[__].

[44] *East Tenn. Nat. Gas, LLC*, 186 FERC ¶ 61,210 (Mar. 21, 2024), R[__].

[45] *Id.* at P. 9.

[46] Request for Rehearing of the East Tennessee Group and Its Members, FERC Docket No. CP23-131-000, at pg. 7 (Apr. 19, 2024), R[__].

[47] *East Tenn. Nat. Gas, LLC*, 187 FERC ¶ 62,119 (May 20, 2024), R[__].

On May 29, 2024, eight days short of a year after the East Tennessee Group initiated the request for the CEII information, more than two-months after FERC granted ETNG its certificate authorizing rolled-in cost recovery of the SAP Project, and nine days after FERC denied the East Tennessee Group's Request for Rehearing by operation of law, the East Tennessee Group received Release Letter CEII No. CE23-61 from FERC informing the East Tennessee Group that its request for ETNG's 2022 Form 567 Data had been approved.[48] But rather than simply providing the information, FERC informed the East Tennessee Group that it would receive a separate email message with instructions for accessing the CEII. However, no such email regarding instructions to obtain the data ever came.[49]

One day later, on May 30, 2024, ETNG filed its 2023 Form 567 Data.[50] The East Tennessee Group again reached out to FERC, who informed the East Tennessee Group that it needed to contact ETNG to obtain the information.[51] Once more, the East Tennessee Group did so; and again, was denied access.[52] By now it had become

---

[48] Release Letter, CEII No. CE24-61 (May 29, 2024), P.App-0148.

[49] Chronology of Events, P.App-0002.

[50] *See also East Tenn. Nat. Gas, LLC*, Form 567 of East Tennessee Natural Gas, LLC for the year ending in 2023 (May 30, 2024), R[___].

[51] East Tennessee Group response to FERC's 08/28/2024 data request re the System Alignment Program, at pg. 4-5, FERC Docket No. CP23-131-000 (Sept. 11, 2024), R[___]; P.App-0002.

[52] ETNG Correspondence with the East Tennessee Group (June 03, 2024), P.App-0151.

clear to the East Tennessee Group that this information was simply not going to be provided for the East Tennessee Group's review.

Two and a half months later, in the course of discussing procedural issues for the pending Petition for Review, a representative from the FERC Office of the Solicitor inquired whether the East Tennessee Group had ever received access to the requested 2022 Form 567 Data.[53] After confirming the East Tennessee Group had not received the requested data, counsel for the East Tennessee Group completed an additional formal request for the 2022 and 2023 Form 567 Data.[54] The next day (August 16, 2024), the East Tennessee Group's request to obtain access to ETNG's 2022 and 2023 Form 567 Data was granted.[55]

Despite these procedural gymnastics, FERC contended in its December 23, 2024, Order denying the East Tennessee Group's Request for Rehearing that the East Tennessee Group eventually received the information it requested and then

---

[53]  East Tennessee Group's response to FERC's 08/28/2024 data request re the System Aliment Program, at pg. 5, FERC Docket No. CP23-131-000 (Sept. 11, 2024), R[__]; Chronology of Events,P.App-0003.

[54]  East Tennessee Group's response to FERC's 08/28/2024 data request re the System Aliment Program, at pg. 5, FERC Docket No. CP23-131-000 (Sept. 11, 2024), R[__]; Chronology of Events, P.App-0003.

[55]  East Tennessee Group response to FERC's 08/28/2024 data request re the System Aliment Program, at pg. 2 n. 2, FERC Docket No. CP23-131-000 (Sept. 11, 2024); FERC Correspondence with the East Tennessee Group (Aug. 16, 2024), P.App-0152.

decided to do nothing with it.[56] FERC's contention was conveniently misleading. FERC ignored the fact that before the East Tennessee Group was directed to provide its findings from the Form 567 Data, the Certificate and predetermination for rolled-in rates had already been granted ten months earlier, that FERC had also issued its denial of the East Tennessee Group's Request for Rehearing by operation of law, and that FERC had also authorized ETNG to commence construction. Thus, FERC apparently contended that despite a year of obfuscation and obstruction by ETNG and FERC, the East Tennessee Group's failure to present arguments based on analysis of the belatedly provided information was somehow unreasonable. FERC's contention reflects a perception of due process that is just wrong.

Had the East Tennessee Group been given the requested information, to which it was ultimately determined the East Tennessee Group had been entitled all along, in a timely manner, the East Tennessee Group would have had nine months to examine the information and prepare any arguments before FERC issued the SAP Certificate Order. Instead, FERC appears to be saying that the East Tennessee Group's receipt of the information fourteen months after the fact and five months after FERC's Certificate Order, somehow rights the wrongs committed. It does not.

---

[56]  *East Tenn. Nat. Gas, LLC*, 189 FERC ¶ 61,232, P. 10-12 (Dec. 23, 2024), R[__].

FERC's *post hoc* attempt to blame the East Tennessee Group for ETNG's and FERC's fundamental denials of the due process to which the East Tennessee Group was entitled under 5 U.S.C. § 706 of the APA renders FERC's Rehearing Order arbitrary and capricious, and FERC's reaffirmation of the predetermination of rolled-in rates for the SAP Project lacks reasoned decision-making.

## CONCLUSION

An ostrich may stick its head in the ground to avoid an unpleasant reality; FERC does not have the luxury of doing so under the "reasoned decision-making" standard of the APA. Yet that is precisely what FERC has done here, and why FERC's actions in this case should be reversed.

Reasoned decision-making compelled FERC to take cognizance of the evidence in FERC's own records in FERC Docket No. RP24-617-000 (while the Certificate Order in FERC Docket No. CP23-131-000 was still pending on rehearing). This evidence at least strongly indicated that FERC's initial grant of rolled-in rate treatment had been prematurely and improvidently granted. FERC's failure to recognize this reality must be declared invalid under the reasoned decision-making standard of the APA.

FERC misapplied it's Policy Statement, treating it as a "rule," elevating a single consideration to effectively controlling status, and misapplying the Policy

Statement to the facts of the ETNG SAP Project. FERC thereby failed to engage in reasoned decision-making.

Finally, FERC's denial to the East Tennessee Group of timely access to critical information in ETNG's Form 567s was a fundamental denial of due process, which caused FERC's determination respecting rolled-in rate treatment of the SAP Project to no longer constitute reasoned decision-making.

For these reasons, this Court should set aside FERC's grant of prior approval of rolled-in rate treatment for the cost of the SAP Project.

Respectfully submitted.

*/s/ Kelly A. Daly*
Kelly A. Daly
Ryan J. Regula
Snell & Wilmer L.L.P.
2001 K. Street NW
Suite 425
Washington, DC 20006
202.908.4260
kdaly@swlaw.com
rregula@swlaw.com

Dated: June 16, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 8,285 words.

 2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word Version 2505 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

*/s/Ryan J. Regula*
Ryan J. Regula

Dated: June 16, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2025, I caused copies of the foregoing document to be served by the Court's CM/ECF System, which will send a notice of the filing to all registered CM/ECF users.


_/s/Ryan J. Regula_____
Ryan J. Regula

Dated: June 16, 2025

# EXHIBIT A

# EAST TENNESSEE GROUP

Appalachian Natural Gas
Distribution Company
271 West Main – Suite 200
Abingdon, Virginia  24210

Athens Utilities Board
P.O. Box 689
Athens, Tennessee 37303

Bridgeport Utilities
P.O. Box 36
Bridgeport, Alabama 35740

Cookeville Gas Department
16 N. Oak Street
P.O. Box 998
Cookeville, Tennessee 38503

Elk River Public Utility
District
P.O. Box 970
Tullahoma, Tennessee 37388-
0970

Etowah Utilities Gas
Department
P.O. Box 927
Etowah, Tennessee 37331

Fayetteville Public Utilities
401 Main Avenue N
Fayetteville, Tennessee
37334

Gallatin Natural Gas System
239 Hancock Street
Gallatin, Tennessee  37066

Harriman Utility Board
P.O. Box 434
Harriman, Tennessee 37748

Hawkins County Gas Utility
District
202 Park Boulevard
P.O. Box 667
Rogersville, Tennessee 37857

Jamestown Gas System
P.O. Box 670
Jamestown, Tennessee 38556

Jefferson-Cocke County
Utility District
122 Highway 25E
Newport, Tennessee 37821

Knoxville Utilities Board
P.O. Box 59017
Knoxville, Tennessee 37950-
9017

Lenoir City Utilities Board
P.O. Box 449
Lenoir City, Tennessee 37771

Lewisburg Gas Department
505 North Ellington Parkway
P.O. Box 1069
Lewisburg, Tennessee  37091

Livingston Gas Department
310 McHenry Circle
Livingston, Tennessee  38570

Loudon Utility Gas
Department
Alma Place
P.O. Box 69
Loudon, Tennessee 37774

Madisonville Gas System 400
College Street Madisonville,
Tennessee 37354

Marion Natural Gas System
P.O. Box 408
South Pittsburg, Tennessee
37380

Middle Tennessee Natural
Gas Utility District
P.O. Box 670
Smithville, Tennessee 37166

Oak Ridge Utility District
P.O. Box 4189
Oak Ridge, Tennessee
37831-4189

Powell Clinch Utility District
P.O. Box 428
Lake City, Tennessee 37769

Rockwood Water & Gas
110 North Chamberlain
Avenue
Rockwood, Tennessee  37854

Sevier County Utility District
P.O. Box 4398
Sevierville, Tennessee
37864-4398

Sweetwater Utilities Board
P.O. Box 191
Sweetwater, Tennessee 37874

Unicoi County Gas
Utility District
1414 North Main Street
P.O. Box 599
Erwin, Tennessee 37650